IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35641

|  |  |  |
|---|---|---|
| ) | | |
| DRY CREEK PARTNERS, LLC, an Idaho Limited Liability Company | ) ) ) | |
| | ) | |
| Plaintiff-Appellants, | ) ) | Boise, August 2009 Term |
| | ) ) | 2009 Opinion No. 120 |
| v. | ) ) | |
| | ) | Filed: October 2, 2009 |
| ADA COUNTY COMMISSIONERS, ex rel. STATE OF IDAHO, and JOHN DOES I through X, | ) ) ) | Stephen W. Kenyon, Clerk |
| | ) ) | |
| Defendants-Respondents. | ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. D. Duff McKee, Senior District Judge.

The district court's order is affirmed.

Mimura Law Offices, PLLC, Meridian, for appellants. Susan L. Mimura argued.

Greg H. Bower, Ada County Prosecutor, Boise, for respondents. Lorna K. Jorgensen argued.

_____

J. JONES, Justice.

Dry Creek Partners, LLC, appeals a decision of the district court, affirming the denial by Ada County of a request for a second extension of time to obtain approval of a final subdivision plat. We affirm.

## I.

## Factual and Procedural Summary

In 2000, Harold and Patricia Brush, the owners of property that was to become Red Hawk Estates Subdivision, began generating a plan to develop their property. Twenty acres of their property was excluded from the development and conveyed to

1

HiYield, Inc. In addition to the property conveyed, the Brushes granted HiYield an air, light, and view easement over a portion of the Red Hawk Estates property. HiYield subsequently sold the property and easement to Rockwood Distinctive Homes, L.L.C., Dale Frazell, and Kathleen Keys.

In 2002, the Ada County Board of Commissioners (Board) approved a planned unit development for Red Hawk Estates, which was to be completed in three phases. Later that same year, the Brushes entered into a development agreement with Dry Creek Partners, LLC. Dry Creek was eventually able to obtain the County's approval of both the preliminary and final plats for Phase I of the subdivision. It encountered greater difficulties, however, in moving forward with the development of Phase II.

Dry Creek was required to obtain final plat approval for Phase II of the subdivision on or before July 27, 2006, in order to pursue its development. After encountering difficulties completing the final plat for Phase II, Dry Creek filed a request for a time extension with Ada County Development Services (ACDS). On August 7, 2006, ACDS granted Dry Creek's request, giving it until July 27, 2007, to obtain final plat approval. By June 2007, Dry Creek still had not completed the final plat so it filed a second request for a time extension with ACDS on June 21, 2007. According to Dry Creek, it needed additional time to complete the final plat because the air, light, and view easement holders had convinced the Ada County Highway District (ACHD) to withhold its approval of the final plat.[1]

ACDS denied Dry Creek's request for a second extension on June 25, 2007. It reasoned that, while Dry Creek had filed a timely request for an extension, Dry Creek was ineligible for a second extension based on "current information contained in the public record and interpretation of the Ada County Zoning Ordinance."[2] More specifically, because Dry Creek had previously received a time extension for filing the

---

[1] Dry Creek also relied on the fact that one of its partners had recently passed away and substantial time was spent probating his estate.

[2] Dry Creek contends the determination was invalid because the director of ACDS was required to issue findings of fact and conclusions of law pursuant to Ada County Code section 8-7-6-C, but the findings were issued by Richard Beck, a planner at ACDS. Dry Creek's argument is unpersuasive because the Ada County Code defines the director as "[t]he director of the Ada County development services department *or an authorized representative*." Ada County Code § 8-1A-1 (emphasis added).

2

final plat for Phase II, a second extension was not permissible under Ada County Code section 8-7-6-B-2,[3] which only permits one time extension per applicant.

Dry Creek appealed ACDS's decision denying its request for a second time extension to the Board. In the appeal, Dry Creek argued a second time extension should have been granted based on equitable considerations. According to Dry Creek, an extension was justified because: (1) neighboring property owners were delaying the construction of the project; (2) ACHD refused to approve the final plat until a dispute regarding the air, light, and view easement was resolved in district court; and (3) it "made every effort to . . . comply with all regulatory and administrative legal requirements." In Dry Creek's view, these "extraordinary and extreme circumstances" were sufficient to warrant a second extension.

The same day Dry Creek filed its appeal, it filed a request that the Board order mediation pursuant to Idaho Code section 67-6510. Dry Creek wished to engage in mediation with Dale Frazell and Philip Dater regarding the dispute over the air, light, and view easement. It maintained that Frazell and Dater disputed the construction of a roadway on Red Hawk Estates, thereby clouding title to a right-of-way Dry Creek had dedicated to ACHD, causing ACHD to withhold its approval of the final plat. Because the dispute with Frazell and Dater needed to be resolved before the final plat could be approved, Dry Creek maintained mediation was necessary.

The Board scheduled Dry Creek's appeal to be heard at a public hearing on July 25, 2007. After receiving public comment from Dry Creek, neighboring property owners, owners of property in the subdivision, and other interested persons, the Board tabled consideration of the appeal, opting to address the issue at its next meeting on September 12. The Board did, however, order mediation between Dry Creek, Frazell, and Dater. According to the Board, mediation would "allow the parties to clear up issues surrounding the road serving the project." It would also toll the time on Dry Creek's

---

[3] That provision provides that "[t]he applicant or owner for an approved final plat *may apply for one (and only 1) time extension* for each phase of the final plat. The time extension shall be for a period not to exceed one year." (emphasis added).

3

application,[4] thereby giving Dry Creek the opportunity to "submit, process, and [obtain] Board signature on the final plat prior to the hearing."

Shortly before the next meeting Dry Creek informed ACDS that a mediation session had not been held. By that point, however, ACDS was unwilling to coordinate a mediation session because it had received letters from Frazell and Dater indicating they were not opposed to Dry Creek's development nor interested in engaging in mediation. Based on these letters, ACDS concluded mediation would serve no purpose and, thus, abandoned its efforts to schedule mediation.

At its meeting on September 12, 2007, the Board affirmed the denial of Dry Creek's request for a second time extension. The Board reached its decision without receiving any additional public comment because the public hearing on the matter had been closed. In its findings of fact and conclusions of law, the Board reasoned that ACDS properly denied the extension request because the "request exceeded the number of permissible time extensions for filing the second phase." The Board did not address the status of its order for mediation.

On September 14, 2007, Dry Creek sent a letter to the Board requesting that it reconsider its decision and take action to facilitate mediation. The Board considered Dry Creek's requests during its October 9, 2007, business meeting. At the meeting, the Board reopened the record to permit Dry Creek to submit argument, but ultimately denied both of Dry Creek's requests. In its subsequently issued findings of fact and conclusions of law, the Board concluded it did not have the authority to reopen the record and, therefore, could not reconsider Dry Creek's appeal. It also concluded mediation would serve no purpose and rescinded its prior order of mediation.

Dry Creek sought review of the Board's decisions by the district court, arguing that the Board erred in denying the request for a second time extension and in rescinding the mediation order. In addition, it contended the procedures employed by the Board in considering Dry Creek's requests violated its due process rights. The district court rejected Dry Creek's arguments and affirmed both of the Board's decisions. The court concluded the Board properly denied the extension request because the County's

---

[4] On the date of the hearing, Dry Creek still had two days to obtain approval of the final plat under the original extension.

ordinance only authorized one time extension per applicant. It also determined the Board's decision to rescind the mediation order was also justified as there was no dispute to mediate. Further, the district court ruled that the Board did not violate Dry Creek's due process rights in rescinding the order because mediation was an "executive process" and not part of the "adjudicating process."

Dry Creek now appeals the district court's decision to this Court. On appeal, Dry Creek argues the district court erred in concluding the Board acted in accordance with Idaho law because the Board failed to comply with Idaho Code section 67-6510, violated Dry Creek's due process rights, and caused Dry Creek actual harm. It also argues that Ada County Code section 8-7-6-B-2, which only permits one time extension per applicant, is arbitrary, capricious, and an abuse of discretion. Dry Creek asks this Court to reverse the district court's judgment, remand the case for mediation pursuant to Idaho Code section 67-6510, and order the Board to provide it with due process. The Board argues its decisions were proper and requests an award of attorney fees on appeal.

## II.

## Issues on Appeal

The following issues are presented to this Court on appeal: (1) whether this Court has jurisdiction to review the Board's decision; (2) whether the district court erred in determining that the Board did not violate Idaho law or Dry Creek's due process rights; (3) whether Ada County Code section 8-7-6-B-2 is arbitrary, capricious, and an abuse of discretion; and (4) whether the Board is entitled to attorney fees on appeal.

## A.

## Standard of Review

Because a county is not an "agency" for the purposes of the Idaho Administrative Procedure Act (IDAPA), another statute must provide for judicial review of a county's actions. *Gibson v. Ada County Sheriff's Dept.*, 139 Idaho 5, 7-8, 72 P.3d 845, 847-48 (2003). Idaho's Local Land Use Planning Act (LLUPA) provides for judicial review of certain land use decisions made by local government entities. I.C. §§ 67-6521(1)(d) & 67-6519(4); *Neighbors for a Healthy Gold Fork v. Valley County*, 145 Idaho 121, 126, 176 P.3d 126, 131 (2007). Under the LLUPA, an affected person may seek judicial review of a decision involving a permit authorizing development pursuant to the

5

standards of IDAPA. *Taylor v. Canyon County Bd. of Comm'rs*, 147 Idaho 424, 433, 210 P.3d 532, 541 (2009); *see also* I.C. §§ 67-6519(4) & 67-6521(1)(d). IDAPA authorizes appeals of agency actions to the district court upon the exhaustion of administrative remedies. I.C. § 67-5271.

On appeal from a decision rendered by the district court while acting in its appellate capacity under IDAPA, this Court directly reviews the district court's decision. *Taylor*, 147 Idaho at 430–31, 210 P.3d at 538–39. In reviewing factual issues, however, this Court still conducts an independent review of the agency record. *Wohrle v. Kootenai County*, 147 Idaho 267, 273, 207 P.3d 998, 1004 (2009); *Neighbors for a Healthy Gold Fork*, 145 Idaho at 126, 176 P.3d at 131. The Court will affirm a district court's decision upholding an agency action unless the agency's findings, inferences, conclusions, or decisions are:

> (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3); *see also Petersen v. Franklin County*, 130 Idaho 176, 182, 938 P.2d 1214, 1220 (1997). When reviewing a zoning board's decision, this Court "consider[s] the proceedings as a whole and . . . evaluate[s] the adequacy of procedures and resultant decisions in light of practical considerations with an emphasis on fundamental fairness and the essentials of reasoned decision-making." I.C. § 67-6535(c); *see also Neighbors for a Healthy Gold Fork*, 145 Idaho at 127, 176 P.3d at 132.

The party contesting a zoning board's decision must demonstrate that two requirements are met before the decision will be overturned. *See Neighbors for a Healthy Gold Fork*, 145 Idaho at 126, 176 P.3d at 131. First, it must demonstrate that the board erred in a manner specified in Idaho Code section 67-5279(3). *Id*. Second, it must show that the board's action prejudiced its substantial rights. I.C. § 67-5279(4); *Neighbors for a Healthy Gold Fork*, 145 Idaho at 126, 176 P.3d at 131. Absent either of these two conditions, the district court must affirm the board's action. *Taylor*, 147 Idaho at 431, 210 P.3d at 539. "If the [b]oard's action is not affirmed, 'it shall be set aside . . . and remanded for further proceedings as necessary.'" *Urrutia v. Blaine County*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000) (quoting I.C. § 67-5279(3)).

Determining the meaning of a statute, its application, and whether the statute was violated are matters of law subject to plenary review. *Evans v. Teton County*, 139 Idaho 71, 75, 73 P.3d 84, 88 (2003); *D & M Country Estates Homeowners Ass'n v. Romriell*, 138 Idaho 160, 165, 59 P.3d 965, 970 (2002). However, "[t]here is a strong presumption that the actions of the Board of Commissioners, where it has interpreted and applied its own zoning ordinances, are valid." *Evans*, 139 Idaho at 74, 73 P.3d at 87.

**B.**

This Court has jurisdiction to hear Dry Creek's appeal regarding the denial of its request for a second extension. Although neither party raised the issue of jurisdiction on appeal, this Court must consider the issue sua sponte. *Highlands Development v. City of Boise*, 145 Idaho 958, 960, 188 P.3d 900, 902 (2008).

Judicial review under LLUPA has been constrained to decisions regarding permits required or authorized by the statute. *See Burns Holdings, L.L.C. v. Madison County Bd. of County Comm'rs*, 147 Idaho ____, ____, 214 P.3d 646, 648–49 (2009); *see also* I.C. § 67-6521(1)(b). Review is only permitted in cases involving affected persons who have "applied for a permit . . . and were denied the permit or aggrieved by the decision on the application for the permit" or those who have "an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing development." *Highlands*, 145 Idaho at 961, 188 P.3d at 903; *see also Giltner Dairy, L.L.C. v. Jerome County*, 145 Idaho 630, 633, 181 P.3d 1238, 1241 (2008). "The granting of a permit authorizes . . . development . . . if it 'places a developer in a position to take immediate steps to permanently alter the land'" without further action of the governing board. *Johnson v. Blaine County*, 146 Idaho 916, 920, 204 P.3d 1127, 1131 (2009) (quoting *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley County,* 132 Idaho 551, 555, 976 P.2d 477, 481 (1999)). Decisions involving applications for planned unit developments, conditional use permits, and the development of subdivisions "all constitute decisions granting permits." *Id*.; *see also* I.C. §§ 67-6512, 67-6513, & 67-6515.

Dry Creek is an affected person under LLUPA because it has an interest in real property, namely Red Hawk Estates. That interest was adversely affected by the Board's decision because it effectively denied authorization to develop the property. Pursuant to the Ada County Code, the Board must approve a final plat before the "plat or any

instrument passing title to any portion of [the] plat" may be offered for recording. Ada County Code § 8-6-2-B-2. In addition, "[n]o building permit shall be issued on any property being considered in the subdivision process until," among other things, "the final plat has been recorded." *Id*. § 8-6-2-B-3. It is unlawful for an applicant to subdivide property without complying with these provisions. *Id*. § 8-6-2-B-1. As such, the Board's decision not to grant Dry Creek additional time to obtain approval of the final plat—which was necessary to obtain a subdivision permit—denied Dry Creek's application for a permit authorizing development and prevented Dry Creek from developing its property. *See* I.C. § 67-6513. Because the Board's decision involved the denial of a permit authorizing development, it is subject to judicial review. *See Taylor*, 147 Idaho at 430, 210 P.3d at 538 (stating that judicial review under LLUPA "is limited to situations in which a permit authorizing the development is at issue" and allowing review of a conditional use permit on the petition of an adjacent property owner because that party was found to be "affected" within the meaning of Idaho Code sections 67-6519(4) & 67-6521(1)(d)); *Highlands*, 145 Idaho at 961, 188 P.3d at 903 (holding judicial review of board's land use decision was not permitted because the decision did "not involve the granting or denial of a permit authorizing development").

On the other hand, jurisdiction to review Dry Creek's appeal regarding the Board's actions on its request for mediation is lacking in this case. The Legislature specifically provided that mediation was not part of the official record on an application, thus indicating that LLUPA's provisions for judicial review were not intended to apply to mediation decisions. *See* I.C. § 67-6510(5) ("The mediation process shall not be part of the official record regarding the application.").[5] Moreover, unlike the submission of a final plat, participation in mediation is not a prerequisite to obtaining a permit authorizing development. Although Dry Creek's ability to complete the final plat may have been greater had mediation been successful, mediation is not a necessary step in the application process. Further, a decision by the Board to deny an applicant's request for mediation does not foreclose the issuance of a permit and, thus, does not necessarily

---

[5] Furthermore, the statement of purpose of House Bill number 601, which adopted Idaho Code section 67-6510, notes that the process of mediation is strictly voluntary. *See* Statement of Purpose, H.B. 601, 55th Leg., 2d Reg. Sess. (Idaho 2000) ("This proposal allows greater flexibility for finding solutions on difficult land use planning issues. *Pre- and post-decision mediation is voluntary* for governing boards caught between permit applicants and neighboring property owners." (emphasis added)).

8

preclude an applicant from developing its property. Similarly, a successful mediation outcome does not guarantee development will be authorized. For these reasons, jurisdiction to review the Board's actions regarding mediation is lacking. Because this Court lacks jurisdiction to review the Board's decisions concerning mediation, Dry Creek's claims that the Board's mediation decision violated Idaho Code section 65-6710 and deprived Dry Creek of procedural due process will not be addressed.

### C.

Dry Creek argues that Ada County Code section 8-7-6-B-2 is arbitrary, capricious, and an abuse of discretion because it provides for only one time extension. It contends that, by allowing only one time extension per applicant, the section arbitrarily and capriciously provides affected persons "a tool at the final plat stage to defeat a subdivision plat rather than filing a timely appeal after approval of the preliminary plat." According to Dry Creek, the section is also invalid because it does not give the Board discretion.

The Board argues that section 8-7-6-B-2 is not arbitrary, capricious, or an abuse of discretion. It contends that the provision is necessary because "[t]imelines are extremely important to both the applicant and the County." According to the Board, the limitation period is important to applicants because it ensures the Board will make decisions in a timely manner, thereby enabling applicants to plan their costs and construction timetables, while at the same time protecting their existing interests against changes in zoning laws. The County benefits from the limitation because it ensures applicants carry out subdivision plans and complete construction within a specified time, preventing development sites from being "torn up" indefinitely. The Board points out that similar time extension provisions exist nationwide.

The interpretation of a county's zoning ordinance is a question of law over which this Court exercises free review. *Terrazas v. Blaine County ex rel. Bd. of Comm'rs*, 147 Idaho 193, 203, 207 P.3d 169, 179 (2009). When asked to interpret a local ordinance, this Court employs the same standards used when interpreting a statute. *Evans*, 139 Idaho at 77, 73 P.3d at 90.

Pursuant to the state's police power, the Idaho Legislature has the authority to "enact laws concerning the health, safety and welfare of the people so long as the

9

regulations are not arbitrary or unreasonable." *Van Orden v. Dep't of Health & Welfare*, 102 Idaho 663, 667, 637 P.2d 1159, 1163 (1981). The Legislature, as a function of the police power, has delegated authority to city and county governments to exercise land use planning powers under the LLUPA.[6] *See* I.C. § 67-6503. Included in this authority is the power to adopt ordinances for the processing of subdivision permits. I.C. § 67-6513. Such ordinances are "presumed valid until the contrary is shown." *State v. Clark*, 88 Idaho 365, 377, 399 P.2d 955, 962 (1965); *see also Sweet v. Rechel*, 159 U.S. 380, 392-93 (1895).

For a zoning ordinance to be deemed invalid, it must be unreasonable. *Nelson*, 10 Idaho at 528, 79 P. at 81; 101A C.J.S. *Zoning & Land Planning* § 25 (2009). A zoning ordinance is only unreasonable when it is arbitrary, capricious, or discriminatory. *Ready-To-Pour, Inc. v. McCoy*, 95 Idaho 510, 514, 511 P.2d 792, 796 (1973). Such circumstances exist when the ordinance bears "no substantial relationship to the public health, safety, morals, and general welfare." 101A C.J.S. *Zoning & Land Planning* § 25 (2009); *see also Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). Because "[t]he concept of the public welfare is broad and inclusive," *Berman v. Parker*, 348 U.S. 26, 33 (1954), so long as the reasonableness of a zoning ordinance is fairly debatable, the ordinance will be upheld. *Village of Euclid*, 272 U.S. at 388; 101A C.J.S. *Zoning & Land Planning* § 25 (2009). The party challenging the validity of an ordinance carries the burden of proving its illegality. *Clark*, 88 Idaho at 377, 399 P.2d at 962.

Once it is determined that an ordinance serves the general welfare, this Court will not second-guess the wisdom of the enactment. *Clark*, 88 Idaho at 375–76, 399 P.2d at 961. When a legislative judgment is called into question, it will be upheld if there is "any

---

[6] In addition, the Idaho Constitution grants limited police power to county and city governments. Article XII, section 2 of the Idaho Constitution provides:

> Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws.

Idaho Const. art. XII, § 2. This Court has interpreted article XII as containing three restrictions on local ordinances: that they (1) "be confined to the limits of the governmental body enacting the [ordinance]"; (2) "not be in conflict with other general laws of the state"; and (3) "not be an unreasonable or arbitrary enactment." *State v. Clark*, 88 Idaho 365, 374, 399 P.2d 955, 960 (1965).

state of facts either known or which could reasonably be assumed affords support for it."

*U.S. v. Carolene Prods. Co.*, 304 U.S. 144, 154 (1938). As this Court stated in *Clark*:

> Where a statute, ordinance or regulation presents a proper field for the exercise of the police power, the extent of its invocation and application is a matter which lies very largely in the legislative discretion, and every presumption is to be indulged in favor of the exercise of that discretion, unless arbitrary action is clearly disclosed. The subject matter of the ordinance being within the police power, and properly belonging to the legislative department of government, the courts will not interfere with the discretion, nor inquire into the motive or wisdom of the legislature. If the act is not clearly unreasonable, capricious, arbitrary or discriminatory, it will be upheld as a proper exercise of the police power.

> The courts may differ with the legislature as to the wisdom and propriety of a particular enactment as a means of accomplishing a particular end, but as long as there are considerations of public health, safety, morals, or general welfare which the legislative body may have had in mind, which have justified the regulation, it must be assumed by the court that the legislative body had those considerations in mind and that those considerations did justify the regulation. When the necessity or propriety of an enactment is a question upon which reasonable minds might differ, the propriety and necessity of such enactment is a matter of legislative determination.

*Clark*, 88 Idaho at 375–76, 399 P.2d at 961 (citations omitted). The adoption of similar ordinances by other local governments may be evidence of whether reasonable minds might differ over the propriety of an enactment. *Id.* at 376, 399 P.2d at 961.

Ada County Code section 8-7-6 requires the director of ACDS, meaning the director or his authorized representative, to review applications for time extensions. Ada County Code §§ 8-1A-1 & 8-7-6. The director or representative may only grant a request for a time extension when the application complies with subsections B and C of that section. *Id.* § 8-7-6-A-3. The relevant provisions of those subsections provide:

B. Standards:
. . . .

    2. The applicant or owner for an approved final plat may apply for one (and only 1) time extension for each phase of the final plat. The time extension shall be for a period not to exceed one year.

C. Required Findings: In order to grant a time extension, the director shall make the following findings:

11

1. The time extension meets the standards listed in subsection B of this section; and

2. The applicant and/or owner have adequately justified the need for a time extension.

*Id.* § 8-7-6.

Ada County Code section 8-7-6-B-2 is not arbitrary, capricious, or discriminatory. As noted above, it is well-settled that establishing standards for the processing of subdivision applications is within the police power. This necessarily includes instituting a timeline for the development of subdivisions. *See* 101A C.J.S. *Zoning & Land Planning* § 287 (2009) ("The time within which work under a zoning or building permit must start, or be completed, or a portion thereof be completed, may be limited, in which case the permit expires by limitation where the work is not commenced or completed within the required time."). It is completely reasonable for the Board to desire to prevent prolonged development projects. Doing so serves several zoning purposes including preventing visual blight, stabilizing neighborhoods, maintaining neighborhood property values, and preserving the character of the community.[7] *See* 101A C.J.S. *Zoning & Land Planning* § 3 (2009).

Several other local governments have also found such time extension limitations warranted. *See, e.g.*, Boise City Code § 9-20-05-D-2-b; Meridian City Code § 11-6B-7-C. Allowing for one extension provides a safety valve for applicants that incur unexpected problems in submitting the final plat, while at the same time serving the County's interest in ensuring timely development. Although precluding subsequent extensions may impose burdens on applicants who have legitimate reasons for failing to submit a final plat, the decision to do so is a legislative judgment that does not appear in this case to be unreasonable. *See Village of Euclid*, 272 U.S. at 388–89 (stating a general ordinance will not be held invalid simply because it prohibits some innocent activity); *Benewah County Cattlemen's Ass'n, Inc. v. Bd. of County Comm'rs*, 105 Idaho 209, 215, 668 P.2d 85, 91 (1983) (holding that so long as an ordinance is designed to benefit the general welfare,

---

[7] Dry Creek's application is an excellent example of such a prolonged development. Dry Creek had over four years to submit the final plat for Phase II but failed to do so. The Board utilized every mechanism at its disposal to accommodate Dry Creek in submitting the final plat. Absent limitations on the time in which Dry Creek had to submit its final plat, its application for a permit might have been prolonged indefinitely.

12

"the mere fact of casting financial burdens upon some who must comply does not necessarily render such ordinances unreasonable or arbitrary"). This is especially true because the Board was not even required to provide for a first time extension. *See* Ada County Code § 8-7-6-C ("*In order to grant a time extension*, the director *shall make the following findings*:" (1) "The time extension *meets the standards listed in subsection B* of this section;" and (2) "The applicant and/or owner have *adequately justified the need* for a time extension." (emphasis added)). In the absence of an extension, applicants are still given two years to obtain approval of a final plat. For these reasons, Ada County Code section 8-7-6-B-2 is not arbitrary, capricious, or unreasonable.

In this case, Dry Creek asked the Board to grant a second extension, characterizing the request as an equitable variance from the provisions of Ada County Code section 8-7-6-B. However, because there is express language in section 8-7-6-B that allows for only one time extension, granting a second extension would have been a direct violation of the Ada County Code. Thus, because Dry Creek has not shown that the Board erred, the district court did not err in affirming the Board's decisions.

**D.**

The Board argues it is entitled to an award of attorney fees and costs pursuant to Idaho Code section 12-117. It contends that Dry Creek's appeal lacked a reasonable basis in fact or law because "[t]here is nothing in the record to support the assertions that the Board violated the statute and/or failed to provide Dry Creek with due process." Further, it maintains Dry Creek's contention that the Board was required to force the parties to mediate when there was no dispute is frivolous. Dry Creek has not submitted argument in opposition to the Board's request for fees.

Idaho Code section 12-117 provides:

in any administrative or civil judicial proceeding involving as adverse parties a . . . county . . . and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

I.C. § 12-117(1). The Board is entitled to fees under section 12-117. The Board is the prevailing party on appeal in a proceeding between a county and a person and the appeal was pursued without a reasonable basis in fact or law. The County's ordinance clearly

13

indicated Dry Creek was not entitled to a second time extension and there was no basis on which the Board could have granted an extension. Thus, there was no legal or factual basis for Dry Creek's appeal and the county is entitled to an award of fees and costs. *Giltner Dairy*, 145 Idaho at 633–34, 181 P.3d 1241–42.

## III.

## Conclusion

We affirm the district court's order affirming the Board's denial of the second extension request. We award the Board its attorney fees and costs on appeal.


Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON CONCUR.