# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41214

917 LUSK, LLC, an Idaho limited liability
company,

        Petitioner-Appellant,

v.

CITY OF BOISE, a political subdivision in
the State of Idaho,

        Respondent,

        and

ROYAL BOULEVARD ASSOCIATES, LP,
an Idaho limited partnership,

        Intervenor-Respondent.

Boise, June 2014 Term

2015 Opinion No. 16

Filed: February 10, 2015

Stephen Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Kathryn A. Sticklen, Senior District Judge.

The decision of the district court is <u>reversed</u>.

Spink Butler, LLP, Boise, for appellant. JoAnn Butler argued.

Givens Pursley, LLP, Boise, for respondent Royal Boulevard Associates, LP. Gary Allen argued.

Boise City Attorney's Office, Boise, for respondent City of Boise. Mary Watson argued.

HORTON, Justice.

This case arises from 917 Lusk, LLC's (Lusk) petition for judicial review of the Boise City Council's (City Council) decision granting a conditional use permit for Royal Boulevard Associates, LP (Royal) to build an apartment complex. The Ada County district court affirmed the City Council's decision and Lusk timely appealed. We reverse the decision of the district court.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2011, Royal's predecessor in interest applied for permission to build a 352,000 square foot, five-story, multi-family apartment complex called River Edge Apartments (River Edge) at 1004 West Royal Boulevard in Boise. The site of the proposed construction is near Boise State University, adjacent to the Boise River, east of Ann Morrison Park, and west of property owned by Lusk. The site is zoned Residential Office with a Design Review Overlay (R-OD). Multi-family housing is an allowed use for this location. However, the Boise City Code (BCC) requires a conditional use permit (CUP) in order to construct a building more than 35 feet tall in an R-OD zone. If constructed as planned, River Edge will be between 59 and 63 feet tall.

Lusk was entitled to notice of the application for a CUP due to the proximity of its property to the proposed project. Lusk owns the Keynetics, Inc., building located immediately east and south of River Edge's proposed building site.

On March 5, 2012, the Boise Planning and Zoning Commission (Commission) held a hearing on the River Edge application, receiving testimony from City staff, the applicant team, and members of the public. The Commission unanimously approved granting the River Edge application for a CUP and variance allowing the height exception. The following day, the Commission provided a written explanation for its decision as to the variance and the CUP. This document set forth the conditions of approval, including twelve site-specific conditions.

Lusk appealed the Commission's decision to the City Council, contending that the Commission's decision failed to address the requirements for a CUP. In a 15-page letter, Lusk outlined its claims of error. Lusk asserted multiple errors in the Commission's approval, including claims that the proposed building was incompatible with buildings in the immediate vicinity due to its height and design aesthetics. Of particular importance to this appeal is the focus that Lusk placed on the impact of constructing a 622-bedroom apartment complex with 280 automobile parking spaces, given that River Edge's plans were to lease the bedrooms on an individual basis to students. Lusk asserted that "the proposed project will place an undue burden on transportation and other public facilities in the vicinity" and "the proposed project will adversely affect other property in the vicinity."

On April 17, 2012, the City Council upheld the Commission's approval of the River Edge CUP and denied Lusk's appeal.[1] In addition to adopting the Commission's reasons for its decision, the City Council directly addressed Lusk's concern regarding parking: "The Council also found that the public record from the Planning and Zoning Commission meeting revealed a robust discussion regarding parking. The Commission determined that the project was correctly designated as multi-family and that the level of provided automobile parking was sufficient."

Lusk appealed to the district court, which affirmed the City Council's decision. Lusk timely appealed to this Court.

## II. STANDARD OF REVIEW

The Local Land Use Planning Act (LLUPA) allows an affected person to seek judicial review of an approval or denial of a land use application, as provided for in the Idaho Administrative Procedure Act (IDAPA). I.C. § 67-6521(1)(d); *Dry Creek Partners, LLC v. Ada Cnty. Comm'rs, ex rel. State*, 148 Idaho 11, 16, 217 P.3d 1282, 1287 (2009).

When a district court acts in its appellate capacity pursuant to IDAPA, "we review the district court's decision as a matter of procedure." *Williams v. Idaho State Bd. of Real Estate Appraisers*, 157 Idaho 496, 502, 337 P.3d 655, 661 (2014) (quoting *Jasso v. Camas Cnty.*, 151 Idaho 790, 793, 264 P.3d 897, 900 (2011)). When doing so, we conduct an independent review of the agency record. *Dry Creek Partners*, 148 Idaho at 16, 217 P.3d at 1287 (2009). This Court will affirm a district court's decision upholding a zoning board's action unless the party

---

[1] The BCC characterizes the role of the City Council in deciding appeals as "quasi-judicial." BCC § 11-03-07.05.F. The BCC specifies the limited role to be played by the City Council which, in many aspects, is similar to that of a court reviewing an agency action. BCC § 11-03-07.05.F.5 provides, in pertinent part:

> a.     The City Council may not consider any new facts or evidence on appeal. The City Council's review of appeals is limited to the record prepared by the review body, including the transcript of the hearing, the written appeal, memoranda submitted and oral arguments presented in accordance with the requirements of this section.
> b.     No new evidence may be presented during oral argument.

Subsection G governs the City Council's decision. BCC § 11-03-07.05.G.2 provides: "If the City Council finds error on a factual finding, the City Council shall modify one or more of the findings as warranted by the evidence or substitute its own findings, citing the evidence that supports the substitute findings."

BCC § 11-03-07.05.G.5 further provides:

> If the original decision is not fully supported by the findings, the City Council may:
> > (a) examine the evidence to determine whether additional findings could be supported, make those additional findings and then review the original decision;
> > (b) make such decision as is supported by the findings; or
> > (c) uphold the review body, putting additional conditions on the application as warranted by the facts.

Apparently relying on the authority conferred by BCC § 11-03-07.05.G.5(c), the City Council required, as a condition of its approval, that Royal increase the number of bicycle parking spaces from 48 to 112 due to River Edge's proximity to Boise State University.

contesting the zoning board's decision demonstrates that (1) the board erred in a manner specified in Idaho Code section 67-5279(3), and (2) the board's action prejudiced its substantial rights. *Id.* Idaho Code section 67-5279(3) provides that a board's decision will only be overturned where its findings, inferences, conclusions, or decisions are:

> (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3).

This Court applies its well-established standard of review to evaluate whether there has been an abuse of discretion. The decision-maker must have " 'perceived the issue in question as discretionary, acted within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reached its own decision through an exercise of reason.' " *Krempasky v. Nez Perce Cnty. Planning & Zoning*, 150 Idaho 231, 237, 245 P.3d 983, 989 (2010) (quoting *Haw v. Idaho State Bd. of Med.*, 143 Idaho 51, 54, 137 P.3d 438, 441 (2006)).

The interpretation of a city's zoning ordinance is a question of law over which this Court exercises free review. *Dry Creek Partners*, 148 Idaho at 18, 217 P.3d at 1289 . However, there is a strong presumption that the actions of the City Council are valid when it has interpreted and applied its own zoning ordinances. *Evans v. Teton Cnty.*, 139 Idaho 71, 74, 73 P.3d 84, 87 (2003).

### III. ANALYSIS

Lusk appeals the City Council's decision affirming the Commission's grant of a CUP allowing Royal, the intervenor in this appeal, to construct a building taller than the applicable zoning height limitation. Lusk does not appeal the variance granted to Royal also allowing the height exception.[2] Lusk argues that because the Commission did not follow the correct procedure

---

[2] At the time Royal sought a height exception in the fall of 2011, the BCC provided that height exceptions in an R-OD district "require a commission-level conditional use permit in accordance with the provisions of Section 11-06-06.13." BCC § 11-04-05.06(D). This Court released its opinion in *Burns Holdings, LLC v. Teton Cnty. Bd. of Comm'rs*, 152 Idaho 440, 272 P.3d 412 (2012), on January 25, 2012, wherein we held that under Idaho Code sections 67-6516 and 67-6512(a), a "height restriction can be waived only by a variance, not by a conditional use permit." *Id.* at 444, 272 P.3d at 416. Accordingly, following a public hearing, the Commission granted Royal a variance along with the CUP required by the BCC. Following the Commission's decision, but before the City Council heard Lusk's appeal of the Commission's decision, the Legislature amended Idaho Code section 67-6512 as follows:

for granting a CUP, the City Council erred in affirming the Commission's decision. Lusk contends that the City Council's decision violated its substantial rights, and asks this Court to remand this case back to the Commission for a new public hearing to fully consider all of the criteria required for conditional use approval under the BCC.

**A. The City Council erred by affirming the Commission's decision.**

Lusk argues that the district court erred by affirming the City Council's decision because the Commission's approval was made upon unlawful procedure, not supported by substantial evidence in the record, and arbitrary, capricious and an abuse of discretion. Because we agree with the final claim, we do not address Lusk's other claims of error.

Lusk argues that the BCC "clearly and unambiguously" requires any request for a height increase to only be granted when all of the BBC's criteria governing a CUP application are considered and met. Lusk argues that BCC sections 11-06-04.13 and 11-06-04.14 require the Commission to make a thorough review to determine whether parking will be adequate for the proposed project before granting a CUP. Royal responds that the plain language of these ordinances does not require consideration of parking requirements beyond those in the Parking Chapter of the BCC and that the City Council's interpretation of them was reasonable.

The BCC provides that height exceptions in an R-OD district "require a commission-level conditional use permit in accordance with the provisions of [BCC] section 11-06-06.13."[3] BCC § 11-04-05.06(D). BCC section 11-06-06.13 requires the Commission to consider the criteria set forth in BCC section 11-06-04.13 before approving a height exception. BCC § 11-06-06.13. However, this section says nothing about considering BCC section 11-06-04.14 when

---

In addition to other processes permitted by this chapter, exceptions or waivers of standards, other than use, inclusive of the subject matter addressed by section 67-6516, Idaho Code, in a zoning ordinance may be permitted through issuance of a special use permit or by administrative process specified by ordinance, subject to such conditions as may be imposed pursuant to a local ordinance drafted to implement subsection (d) of this section.

I.C. § 67-6512(f); 2012 Idaho Sess. L. ch. 334, § 2, p. 929 (eff. April 5, 2012). The legislature also amended this section to include specific notice requirements when a CUP is requested for a height allowance. I.C. § 67-6512(b); 2012 Idaho Sess. L. ch. 334, § 1, p. 927 (eff. April 5, 2012). Therefore, effective April 5, 2012, a variance is no longer the exclusive means to seek a height exception under LLUPA when a local ordinance specifies that a height exception may be allowed by way of a CUP or other administrative process.

[3] Section 11-06-06.13 is entitled "Public Services, Height Exception" and applies to "[p]ublic service poles, towers or similar installations" over seventy feet tall, while the preceding section entitled "General Height Exceptions" applies to "height exceptions set forth in this ordinance." The parties agree that Section 11-04-05.06(D) intended to cite to Section 11-06-06.12 rather than Section 11-06-06.13. Because both Sections require consideration of Section 11-06-04.13, but not consideration of Section 11-06-04.14, it is irrelevant whether Section 11-04-05.06(D) erroneously refers to Section 11-06-06.13.

granting a height exception. Accordingly, we will only consider Lusk's arguments regarding whether BCC section 11-06-04.13 required the Commission to consider additional parking requirements beyond those contained in the Parking Chapter of the BCC. BCC section 11-06-04.13 states in relevant part:

> The Commission, following the procedures outlined below, may approve a conditional use permit when the evidence presented at the hearing is such as to establish:
>
> ...
>
> C. That the site is large enough to accommodate the proposed use and all yards, open spaces, pathways, walls and fences, parking, loading, landscaping and other features as are required by this title; and
>
> D. That the proposed use, if it complies with all conditions imposed, will not adversely affect other property of the vicinity; . . . .

BCC § 11-06-04.13.

Lusk argues that Section 11-06-04.13 requires the Commission to make a thorough review to determine whether planned parking is adequate for the proposed project before granting a conditional use permit. Lusk argues that the parking standards laid out in BCC section 11-10-01.01 apply to "allowed uses" and that compliance with the parking standards does not automatically satisfy the parking requirements for a conditional use.

The plain language of BCC section 11-06-04.13.C does not compel consideration of parking requirements beyond those contained within the Parking Chapter of the BCC. This section states that the Commission must find that "the site is large enough to accommodate the proposed use and all ... parking, loading, landscaping and other features *as are required by this title*." BCC § 11-06-04.13.C. This section simply requires the Commission to determine whether the proposed site is of sufficient size to satisfy BCC minimum standards for parking, as well as the other items identified in this subsection. The plain meaning of the ordinance's reference to "this title" is BCC Title Eleven, entitled "Boise City Zoning Ordinance."[4] Chapter 11-10 of the BCC (the Parking Chapter), establishes minimum automobile parking standards for different categories of development and states that the "number of required parking spaces is based on the primary use of the site." BCC § 11-10-01.01(C). BCC section 11-06-04.13.C is satisfied if a site

---

[4] BCC section 11-01-01.01 provides: "This Ordinance shall be cited as the 'Boise City Zoning Ordinance," and shall also be known as Title Eleven (XI), Boise City Code, Boise, Idaho." Each chapter of Title Eleven is then referred to as Chapter 11-01, Chapter 11-02, etc.

is large enough to accommodate the proposed use along with the parking required by Chapter 11-10.

This conclusion does not end our analysis. BCC section 11-06-04.13.D requires that the Commission find that "the evidence presented at the hearing is such as to establish… [t]hat the proposed use … will not adversely affect other property of the vicinity." BCC § 11-06-04.13.D. Idaho Code section 67-6512(d)(7) provides that "conditions may be attached" to a CUP "[r]equiring more restrictive standards than those generally required in an ordinance." The critical inquiry is not whether there was "robust discussion" of parking issues before the Commission, as the City Council found to have occurred.[5] Rather, the appropriate inquiry is whether the Commission recognized that it possessed the discretionary authority to impose parking requirements beyond the minimum established by the Parking Chapter. The record unambiguously demonstrates that the Commission failed to perceive that it had discretion to require additional parking as a condition of approval of the CUP.

On March 5, 2012, Joshua Johnson, a staff member of Boise City Planning and Development Services, provided a staff report to the Commission. In that report, he stated:

> Finally, the landowner who testified in opposition to the height also brought up a perceived shortage of parking as a further point of opposition. *The project meets City parking standards for multi-family units and this issue is not before the Commission.* The only two items that should be considered are the Variance for a height exception and the Boise River System Permit.

At the March 5, 2012, hearing before the Commission, Johnson advised the Commission that Royal's project "meets our Parking Code. This issue is not before the Commission tonight. The application tonight only concerns the additional height requested by the applicant."[6] Following substantial testimony relating to parking concerns, Commissioner Stevens informed the Commission that it lacked authority to impose additional requirements for parking beyond those found in the Parking Chapter:

---

[5] The City Council's decision stated: "The Council also found that the public record from the Planning and Zoning Commission meeting revealed a robust discussion regarding parking. *The Commission determined* that the project was correctly designated as multi-family and *that the level of provided automobile parking was sufficient*." There was indeed robust discussion of parking issues before the Commission; however, as will be shown, the Commission made no finding as to the sufficiency of automobile parking beyond its determination that the application satisfied the minimum parking requirements imposed by the Parking Chapter.

[6] We note that an individual, whom Johnson identified as "my attorney," remained silent when Johnson provided the Commission with this erroneous legal advice. We infer that Johnson had not personally retained counsel in view of his earlier statement that the application had been reviewed by the Boise City Attorney's office.

I want to remind the Commissioners that the parking issue tonight is not actually before us. *This Commission is not in position to make findings that require our applicant to be held to standards above that which is in our code. That would be arbitrary and would make the City be in some serious hot water*, so I want to make sure that when we have our discussion tonight, that we keep the parking out of it. It is not before us. *They have met code and to require that is above and beyond what we are allowed to do*.

Commissioner Story then echoed this view, stating: "Like you said parking is off the table. This complies. I can't say our code is correct on parking and the way it should be handled, but I think the rubber meets the road where we're talking about height and that's really the only thing we have before us." Thereafter, the Commission unanimously approved the CUP.

Following Lusk's appeal to the City Council, Hal Simmons, Planning Director with Boise City Planning and Development Services, sent a memorandum to the City Council, outlining staff recommendations regarding the appeal. In that memorandum, he reiterated the erroneous legal premise advanced in the staff report and accepted by the Commission: "While parking was discussed, the Commission correctly observed that the project meets established zoning ordinance standards and that *it was not in their purview to require additional parking*."

He later stated:

The appellant states that parking problems associated with the high density project will overburden public facilities. This sentence highlights two fundamental flaws in the appeal: As proposed, the project meets density and parking requirements of Boise City Code. These standards are outlined in detail within the staff report and are discussed in the minutes from the March 5, 2012 hearing. Commissioner Stevens stated at the beginning of the deliberation, *"I want to remind the Commissioners that the parking issue tonight is not actually before us. This Commission is not in position to make findings that require our applicant to be held to standards above that which is in our code. That would be arbitrary and would make the City be in some serious hot water."*

(emphasis in original). Although the record reflects the City Council's unanimous denial of Lusk's appeal, it is silent as to any discussion as to whether the Commission had the right to require additional parking as a condition for approving the CUP.

As previously noted, Idaho Code section 67-6512(d)(7) provides that "conditions may be attached" to a CUP "[r]equiring more restrictive standards than those generally required in an ordinance." BCC section 11-06-04.13.D requires that the Commission determine "[t]hat the proposed use … will not adversely affect other property of the vicinity." BCC § 11-06-04.13.D. The testimony before the Commission related the potential for adverse effects to the vicinity due

8

to automobile parking needs that would result from the project. The Commission failed to recognize that Idaho law and the BCC provided it with discretion to require the project to provide on-site automobile parking beyond the minimum required by the Parking Chapter. As a result of this failure to apply governing legal standards, the Commission refused to consider the adverse effects on property in the vicinity. Thus, we find that the decision reflected an abuse of discretion. *Dunagan v. Dunagan*, 147 Idaho 599, 603, 213 P.3d 384, 388 (2009) (error found when trial court failed to recognize grounds for exercise of discretion).

On judicial review, the district court found no abuse of discretion, which was likewise error. The district court noted that "[a]lthough some questioned the adequacy of the code itself, it is not within this Court's purview in this case to tell the City what the codes should contain." Although the district court was correct in its determination as to the scope of its authority, it failed to recognize that Idaho Code section 67-6512(d)(7) and BCC section 11-06-04.13.D authorized the Commission to impose parking requirements as a condition of approval beyond the minimum established by the Parking Chapter.

**B. Lusk has demonstrated prejudice to substantial rights.**

Our determination that the Commission abused its discretion requires us to consider whether Lusk identified prejudice to its substantial rights, as required by Idaho Code section 67-5279(4). Immediately following its conclusion that there was no abuse of discretion, the district court stated:

> Finally, the Court concludes that Lusk has failed to demonstrate that any other of its claimed substantial rights have been violated. There is an allegation that the public parking situation may be adversely impacted by the project, but there are no allegations that Lusk's property, the use of the property, or its business could be. Rather, Lusk appears to assert that parking by tenants of the project could impact the entire area, including Ann Morrison Park, but makes no specific argument on its own substantial rights.

Although the district court was correct in stating that Lusk identified adverse consequences to the entire area, it was incorrect in its statement that Lusk had failed to allege an impact on "its own substantial rights." Lusk's opening brief before the district court explained the factual basis for its contention that approval of the CUP would have a negative impact on Lusk:

> The Project would contain 622 bedrooms and house at least 622 student tenants, but only provide 280 parking spaces.

9

Parking around the Project is already strained. Ann Morrison Park hosts a variety of high traffic events throughout the year. During the summer river floating season, soccer season, and other sports seasons, parking in Ann Morrison Park and along Royal Boulevard becomes heavily congested. The inadequate parking will make the proposed Project an undesirable place to live, adversely affect the businesses in the area, and harm the public's ability to enjoy Ann Morrison Park and the Boise River Greenbelt. Students that cannot find parking within the housing Project will park at adjacent properties, *including Petitioner's property*. As a result, *Petitioner* and other property owners *will be forced to expend considerable time and resources policing the* parking on their properties. Congested parking will drive customers away from businesses in the area.

(citations to the administrative record omitted). Lusk reiterated the impact of the decision:

The most immediate, real, significant, and anticipated *adverse consequence to Petitioner* and other property owners in the neighborhood (including the public who travel to and use Ann Morrison Park) is the parking crisis created by the City's approval of an additional two stories of habitable apartments over and above the allowed height of thirty-five feet in the R-OD zone – all without appropriate conditions being placed on the conditional use request to ensure that adverse impacts are mitigated. In fact, there was no discussion, no analysis, and no deliberation by the City to review the potential adverse parking impacts caused by this additional habitable apartments that are not allowed by right under the Zoning Ordinance.

The lack of deliberation by the City, and the failure of the City to attach appropriate conditions to this conditional use approval (assuming, solely for arguments sake, that the conditional use could even be appropriately conditioned so as to mitigate adverse impacts), *will devalue Petitioner's property, require time and expense for Petitioner to police parking on its own property, inconvenience employees and visitors to Petitioner's building,* cause similar deleterious consequences to the neighborhood around the Project, potentially drive business from the neighborhood, and cause adverse consequences for patrons of Ann Morrison Park.

In our view, Lusk has satisfied the requirement of our decision in *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 254 P.3d 1224 (2011). There, we stated:

[W]hen a petitioner *opposes* a governing board's decision to grant a permit authorizing development, . . . the petitioner must still show, not merely allege, real or potential prejudice to his or her substantial rights. I.C. § 67–5279(4). Since a party *opposing* a landowner's request for a development permit has no substantial right in seeing someone else's application adjudicated correctly, he or she must therefore show something more. The petitioner opposing a permit must be in jeopardy of suffering substantial harm if the project goes forward, such as a reduction in the opponent's land value or interference with his or her use or ownership of the land. *See Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 431, 958 P.2d 583, 588 (1998) (vacating a board decision because it could impact property value or the petitioners' use and enjoyment of their land).

*Id.* at 233, 254 P.3d at 1229. The record before the Commission sets forth substantial evidence supporting Lusk's claim of potential prejudice to its substantial rights. The project calls for 622 bedrooms to house students at Boise State University. The Parking Chapter requires only 280 parking spaces for the project. Without even attempting to evaluate the impact of guests who arrive by automobile, if only half of the River Edge tenants have an automobile, there will be significant numbers of residents looking for parking in the vicinity. We conclude that there is sufficient evidence that Lusk is in jeopardy of economic harm from the project to satisfy the requirements set forth in *Hawkins*.

### C. No attorney fees are awarded on appeal.

Lusk, the City, and Royal all claim entitlement to attorney fees under Idaho Code section 12-117. That statute provides, in relevant part, that:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1). "An award of attorney fees pursuant to the section may only be made when the court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably and without foundation." *City of Boise v. Ada Cnty.*, 147 Idaho 794, 812, 215 P.3d 514, 532 (2009) (internal quotation and citations omitted).

The City and Royal are not entitled to attorney fees because they did not prevail in this appeal. *Rowley v. Ada Cnty. Highway Dist.*, 156 Idaho 275, 282, 322 P.3d 1008, 1015 (2014).[7] Although Lusk has prevailed in this appeal and is therefore entitled to recover its costs on appeal, we are unable to conclude that the defense of this appeal was frivolous. We therefore decline to award attorney fees to Lusk.

---

[7] Even if it had prevailed, Royal would not have been entitled to recover attorney fees under Idaho Code section 12-117. The City is defined as a political subdivision for purposes of the statute. I.C. § 12-117(5)(b) (" 'Political subdivision' means a city, a county, any taxing district or a health district. . . ."). However, the statute addresses situations "involving as adverse parties ... a political subdivision ... and a person." Thus, in order for a party to receive an award under Idaho Code section 12-117, it must be adverse to the political subdivision. *Neighbors for Responsible Growth v. Kootenai Cnty.*, 147 Idaho 173, 177, 207 P.3d 149, 153 (2009) (noting that the party seeking attorney fees were "intervenors on the side of the county—perhaps the most obvious indicator that the two are not adverse.").

## IV. CONCLUSION

We reverse the decision of the district court affirming the City Council's approval of the Commission's decision to grant the CUP to Royal. We award costs on appeal, but not attorney fees, to Lusk.

Justices EISMANN, J. JONES and Justice Pro Tem WALTERS **CONCUR**.

Chief Justice BURDICK Dissents without opinion.