IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35804

| | | |
|---|---|---|
| MICHAEL A. DUNCAN, | ) | Lewiston, April 2010 Term |
| Petitioner-Appellant, | ) | |
| | ) | 2010 Opinion No. 46 |
| v. | ) | |
| STATE BOARD OF ACCOUNTANCY, | ) | Filed: April 23, 2010 |
| Respondent. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Nez Perce County. Honorable Carl B. Kerrick, District Judge.

The decision of the district court is affirmed.

Clark & Feeney, Lewiston, for appellant. Paul Thomas Clark argued.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, for respondent. Larry C. Hunter argued.

J. JONES, Justice.

Michael A. Duncan appeals from the decision of the district court affirming the ruling of the Idaho State Board of Accountancy. We affirm.

**I.**

Duncan had prepared tax returns for Randy and Evelyn Forsmann since 2001. After Duncan's firm, Sellman & Duncan, PLLC, did the initial preparation of the Forsmanns' 2003 tax return, Duncan was contacted by Evelyn Forsmann on April 28, 2004. Evelyn asked Duncan to recommend a divorce attorney. At some point in May 2004, Duncan formed a personal relationship with Evelyn that developed during the course of the Forsmanns' divorce. The Forsmanns' divorce became final on August 13, 2004. Although Duncan alleges that all substantive work on the return was completed prior to his relationship with Evelyn, an extension was filed during the relationship, and the return itself was not filed until after the divorce. A letter regarding the extension was sent from Duncan's firm to Randy Forsmann on August 11, 2004, with Duncan listed as the contact person. It also appears that a substantive review of the

return was completed prior to its filing in September 2004. In addition, a letter signed by Duncan was sent to the Forsmanns regarding their return on September 9, 2004. A completed return was eventually filed.

Randy Forsmann filed a verified complaint with the Idaho State Board of Accountancy. The complaint alleged that Duncan continued to work on a joint tax return for Randy and Evelyn after Duncan became aware that they were seeking a divorce and after Duncan began a personal relationship with Evelyn. Randy alleged that Duncan's relationship with Evelyn constituted a conflict of interest in violation of American Institute of Certified Public Accountants (AICPA) Rule 102.3 and Idaho Administrative Rule 01.01.01.004.001. A hearing was held before the State Board of Accountancy. The Board issued Findings of Fact, Conclusions of Law, and Final Order holding that Duncan had a conflict of interest that he failed to disclose as required by AICPA Rule 102.3. As a result, the Board ordered Duncan to pay $1,000 in administrative penalties, $2,000 in administrative costs, and to undergo four hours of ethics training. Duncan filed a petition for judicial review of the Board's decision. Duncan also filed a motion to dismiss the proceedings based upon the Board's failure to prepare a complete transcript of the administrative hearing. The district court denied the motion to dismiss and affirmed the Board's findings. The district court found that Duncan's challenge was simply a request for new findings of fact by the court, that the Board's findings were supported by substantial evidence, and that Duncan had failed to demonstrate prejudice. Duncan then appealed to this Court.

## II.
## Issues on Appeal

The following issues are presented on appeal: (1) whether the district court erred in refusing to overturn the Board's decision and (2) whether the Board is entitled to attorney fees on appeal.

## III.
## A.

The district court reviewed the Board's decision in its appellate capacity pursuant to Idaho Code sections 54-224 and 67-5279. When the district court acts in its appellate capacity, this Court reviews the record independently. *Cooper v. Bd. of Prof'l Discipline*, 134 Idaho 449, 454, 4 P.3d 561, 566 (2000). We will defer to the Board's findings of fact unless they are clearly erroneous and unsupported by evidence in the record. *Id.*

2

The actions of an agency like the Board are afforded a strong presumption of validity. *Id.* This Court may not substitute its judgment for that of the Board. *Id.* The Board's decision may be overturned if it: "(a) violate[s] constitutional or statutory provisions; (b) exceed[s] the agency's statutory authority; (c) [is] made upon unlawful procedure; (d) [is] not supported by substantial evidence on the record as a whole; or (e) [is] arbitrary, capricious, or an abuse of discretion." *Id.* (citing I.C. § 67-5279(3)). Further, the Board's decision will be upheld unless the appellant demonstrates that one of his substantial rights has been prejudiced. *Id.* (citing I.C. § 67-5279(4)).

Where an agency interprets a statute or rule, this Court applies a four-pronged test to determine the appropriate level of deference to the agency interpretation. This Court must determine whether: (1) the agency is responsible for administration of the rule in issue; (2) the agency's construction is reasonable; (3) the language of the rule does not expressly treat the matter at issue; and (4) any of the rationales underlying the rule of agency deference are present. *Preston v. Idaho State Tax Comm'n*, 131 Idaho 502, 504, 960 P.2d 185, 187 (1998). There are five rationales underlying the rule of deference: (1) that a practical interpretation of the rule exists; (2) the presumption of legislative acquiescence; (3) reliance on the agency's expertise in interpretation of the rule; (4) the rationale of repose; and (5) the requirement of contemporaneous agency interpretation. *Id.* at 505, 960 P.2d at 188.

**B.**

Duncan argues that this Court should overturn the Board's findings because the Board added additional elements to Rule 102.3. Specifically, Duncan argues that Rule 102.3 does not require an accountant to disclose a conflict of interest when all parties are already aware of it. Additionally, Duncan argues that the Board erroneously relied on one of the comments to Rule 102.3 relating to divorce because he was not giving tax or financial planning advice to the Forsmanns. Finally, Duncan argues that he cannot have violated Rule 102.3 because he performed no substantive work after the time when the conflict arose and, even if he had, that the work would not have changed in any way as a result of the conflict because the return was entirely concerned with events that transpired before the conflict arose.

The Board argues that this Court should reject Duncan's arguments because disclosure is required by the plain language of the Rule and the Board's findings demonstrate that Duncan did not make the required disclosure. The Board also argues that even though both parties may have

3

been aware of the conflict, there was no demonstration that Randy consented to Duncan's continued representation in spite of the conflict. Finally, the Board argues that the relationship between Duncan and Evelyn clearly constituted a conflict within the meaning of the Rule that must have been disclosed.

Duncan's key contention is that this Court should not give deference to the Board's interpretation of AICPA Rule 102.3 because it is unreasonable. Rule 102.3 provides:

> A conflict of interest may occur if a member performs a professional service for a client or employer and the member or his or her firm has a relationship with another person, entity, product, or service that could, in the member's professional judgment, be viewed by the client, employer, or other appropriate parties as impairing the member's objectivity. If the member believes that the professional service can be performed with objectivity, and the *relationship is disclosed to and consent is obtained from such client*, employer, or other appropriate parties, the rule shall not operate to prohibit the performance of the professional service. *When making the disclosure, the member should* consider Rule 301, *Confidential Client Information*.

CODE OF PROF'L CONDUCT RULE 102.3 (Am. Inst. of Certified Public Accountants 2006) (emphasis added). Rule 102.3 is applied to Idaho accountants by the Idaho Administrative Code. Idaho Admin. Code sec. 01.01.01.004.001. An agency interpretation of a rule or statute is unreasonable when it "is so obscure or doubtful that it is entitled to no weight or consideration." *Preston*, 131 Idaho at 505, 960 P.2d at 188 (quoting *J.R. Simplot Co. v. Idaho State Tax Comm'n*, 120 Idaho 849, 862, 820 P.2d 1206, 1219 (1991)). Generally, we have found agency interpretations reasonable unless the agency relied on erroneous facts or law in its determination. *See, e.g.*, *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 313, 209 P.3d 289, 295 (2009) (finding an interpretation unreasonable because the Department of Insurance erroneously relied on practices from other states that did not have the same statute as the one enacted in Idaho); *Farrell v. Whiteman*, 146 Idaho 604, 610–11, 200 P.3d 1153, 1159–60 (2009) (rejecting an agency interpretation provided in an amicus brief because it was contrary to the language of the statute and the situation in question was provided for by the language of the statute). Normally, this Court defers to the agency interpretation of statutes and rules. *See, e.g.*, *Canty v. Idaho State Tax Comm'n*, 138 Idaho 178, 183, 59 P.3d 983, 989 (2002); *Simplot*, 120 Idaho at 863, 820 P.2d at 1220.

The Board is charged with the adoption and enforcement of standards of professional conduct to govern accountants. I.C. § 54-204. Under this authority, the Board adopted AICPA

Rule 102.3 by Idaho Administrative Rule 01.01.01.004.001. Idaho Admin. Code sec. 01.01.01.004.001. Accordingly, the Board was entitled to apply the Rule to Duncan's behavior, which it did, finding that Duncan had a duty to disclose the conflict that arose from the Forsmanns' divorce and his subsequent personal relationship with Evelyn, and that he failed to make the required disclosure or obtain consent from either party. Duncan has made no showing that the Board's reading of the Rule is unreasonable, nor that its findings of fact are erroneous.

In his testimony before the Board, Duncan admitted that he recognized the Forsmann situation as a conflict of interest beginning on April 28, 2004. Duncan also admitted that he did not provide notice of the conflict to Randy because Duncan believed Randy already knew of the conflict. Further, testimony and evidence were provided to the Board that additional services, however minimal, were provided to the Forsmanns after April 28, 2004, when the conflict arose. The Board recognized Duncan's arguments in its findings, but ultimately held that Duncan was required to either terminate services or disclose the conflict to both parties and obtain their consent for the continued provision of tax services. The Board's conclusions were based on its finding that the Rule did not create an exception from disclosure in a situation where the clients were aware of the conflict. The Board also concluded that the actions taken by Duncan after April 28, 2004, constituted tax services within the meaning of the Rule.

The Board's interpretation of the rule is reasonable. The language of the Rule clearly states that disclosure must be made and consent obtained before services are continued in the face of a conflict. CODE OF PROF'L CONDUCT RULE 102.3 (Am. Inst. of Certified Public Accountants 2006). In addition, the language "when making the disclosure, *the member* should consider Rule 301," indicates that the duty to disclose is on the accountant and that the accountant is not free to assume that the parties are aware of the conflict and have impliedly consented to continued service. CODE OF PROF'L CONDUCT RULE 102.3 (Am. Inst. of Certified Public Accountants 2006). Further, the Board's reading of the rule is consistent with sound public policy. If the accountant were allowed to make the determination that the parties knew or may have known of his conflict, the client is at the accountant's mercy, dependent on the accountant's subjective understanding of the client's thoughts and concerns. Professional standards should not be dependent on the accountant's subjective understanding of what he may think the client understands. The Board's reasoning is quite similar to the reasoning we apply in the agency law context, under the theory that the principal is presumed not to have knowledge of

5

acts or interests of the agent that may constitute a conflict of interest because the burden of disclosure of the conflict is on the agent. *See Melgard v. Moscow Idaho Seed Co.*, 73 Idaho 265, 273, 251 P.2d 546, 552 (1952). Here, because the burden of disclosure is on the accountant, it is not unreasonable for the Board to decide that the accountant is not entitled to assume knowledge of the conflict.

Deference to the Board's interpretation is also supported by the *Preston* rationales for agency deference, which provide no compelling reason to deviate from the Board's interpretation. First, as noted above, the Legislature has recognized the need for practical standards to govern professional conduct and the Board's interpretation provides such a standard. Second, because the Board is empowered by the Legislature to adopt professional standards, the Legislature has presumably acquiesced in the Board's interpretation of Rule 102.3. Third, because the Board is composed of accounting professionals, it is reasonable to rely on their expertise in determining appropriate conflict procedure. Fourth, requiring affirmative disclosure by the accountant and assent by the client serves the rationale of repose, preventing a potential conflict from hanging over the parties' heads while the accountant makes an attempt to ascertain whether the conflict was discovered and impliedly acquiesced in by the clients.[1] Thus, the rationales, as a whole, support deference to the Board's interpretation of the Rule, particularly in light of the fact that no compelling showing was made to demonstrate that the interpretation was in error.

As a result, because the Board's interpretation is reasonable, employing a rationale previously used by this Court, and no compelling reason is presented to depart from it, the district court correctly denied Duncan's petition for judicial review.

## C.

The Board argues that it is entitled to attorney fees pursuant to Idaho Code section 12-121 and I.R.C.P. 54(e)(1). "Attorney fees can be awarded under [section 12-121] only if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Farr West Investments v. Topaz Marketing, L.P.*, 148 Idaho 272, 277, 220 P.3d 1091, 1096 (2009). The statute does not, however, authorize an award of attorney fees on appeal of an agency ruling. *Cheung v. Pena*, 143 Idaho 30, 36, 137 P.3d 417, 423 (2006). Furthermore, I.A.R. 35(b)(5)

---

[1] The fifth rationale is inapplicable in this matter because this case deals with a regulation adopted by the Board rather than a statute adopted by another body that would need to be interpreted by the Board.

requires a respondent seeking attorney fees to designate entitlement to fees as an additional issue on appeal. I.A.R. 35(b)(5); *see also Independence Lead Mines v. Hecla Mining Co.*, 143 Idaho 22, 29, 137 P.3d 409, 416 (2006). The Board does not list attorney fees as an additional issue on appeal, nor does it cite to a statutory provision that demonstrates its entitlement to attorney fees, even though there are arguably grounds to award fees under Idaho Code section 12-117. Thus, the Board is not entitled to attorney fees on appeal.

## IV.

Because Duncan has failed to demonstrate that the Board's decision was clearly erroneous or that he was prejudiced in a substantial right, the decision of the district court is affirmed. The Board is awarded costs, but no attorney fees, on appeal.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and Justice Pro Tem REINHARDT, CONCUR.