# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50197

In the Matter of an Application for a
Preliminary Plat Filed by Dan Birch for the
Renaissance Project Development, LLC: On
property consisting of 38.91 acres located in
Section 35 and 36, Township 9 South, Range 17
East, and Section 1 and 2, Township 10 South,
Range 17 East, Addressed as 3039 Deer Haven
Court, Twin Falls, Idaho, a Suburban Urban
Interface Zone in Twin Falls County, Idaho.

----------------------------------------------------------

RENAISSANCE PROJECT
DEVELOPMENT, LLC,

    Petitioner-Appellant,

v.

TWIN FALLS COUNTY, a political
subdivision; TWIN FALLS BOARD OF
COUNTY COMMISSIONERS, and TWIN
FALLS COUNTY PLANNING AND
ZONING COMMISSION,

    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2023 Term

Opinion Filed: March 5, 2024

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County, Benjamin J. Cluff, District Judge.

The decision of the district court is affirmed.

Stover, Gadd & Associates, Twin Falls, for Appellant. Kelly H. Andersen argued.

Grant P. Loebs, Twin Falls County Prosecuting Attorney, Twin Falls, for Respondent. Nancy Austin argued.

---

BRODY, Justice

This appeal involves a petition for judicial review of a county planning and zoning decision. Renaissance Project Development, LLC ("Renaissance"), challenges the district court's

1

decision upholding the Twin Falls County Board of Commissioners' (the "County") denial of a preliminary plat application for phases two through five of the Shoshone Heights Subdivision ("Shoshone Heights"). The County affirmed the denial of Renaissance's preliminary plat application due to safety concerns surrounding the ability of residents to evacuate the subdivision in an emergency through a single, gated point of egress. The district court dismissed the petition for judicial review. We affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Shoshone Heights is a residential subdivision developed by Renaissance. The subdivision is located near the Evel Knievel jump site on the Snake River Canyon rim and is situated within the City of Twin Falls (the "City") area of impact ("AOI") in Twin Falls County. Currently, the subdivision consists of undeveloped land and eighteen homes on one-acre lots that were constructed around 2014 as part of phase one of the subdivision.

Renaissance purchased Shoshone Heights from Casper Southgate, LLC ("Casper"), in August of 2007. Just a few months before that transaction, Casper and the City entered into a Land Trade Agreement, which resulted in the City obtaining the Evel Knievel jump site and the land surrounding it for a total of 6.71 acres. In exchange, Casper received 6.71 acres of land north of its proposed development adjacent to the canyon rim. After the land trade took place, the City rezoned the property at issue as suburban urban interface ("SUI") and approved a planned unit development ("PUD").

Two years later, on September 14, 2009, the City voted to amend the Land Trade Agreement to allow Renaissance to develop the property in phases. Pursuant to this amendment, the Land Tade Agreement would become effective when both the City and the County provided approval for phase one of the Shoshone Heights Subdivision. The amendment was never signed.

On November 1, 2009, Renaissance and the City entered into a PUD Agreement, which incorporated the Land Trade Agreement by reference. The PUD Agreement permitted the development to be "a gated residential subdivision with private streets," and further permitted phased development of the property so long as each phase is "in substantial compliance with the Master Development Plan, [the] PUD Agreement, and an approved Preliminary Plat for the entire Project." The PUD Agreement also provided that "[a]pproval for each Phase may be obtained by submission of a technically correct Final Plat for each Phase to City Council, which approval shall not be unreasonably withheld." The final plat for phase one of the Shoshone Heights Subdivision

2

was approved and recorded by the County in 2014. The City obtained title to the Evel Knievel jump site, and phase one of the subdivision was constructed shortly thereafter. The County subsequently took over management of the Twin Falls City AOI after phase one of the subdivision had been built.

On May 17, 2021, Renaissance filed an application for a preliminary plat for Shoshone Heights phases two through five (the "Application") with Twin Falls County Community Development Services ("Community Development Services"). The Application sought approval to construct a thirty-six residential lot subdivision on the property.

The required agencies provided comment on the Application through signed letters submitted to Community Development Services. Relevant to this appeal, the Idaho Department of Water Resources ("IDWR") commented that each proposed lot appeared to have its own well which would have to fall under the domestic use definition. Under this definition, each lot owner would be limited to irrigating no more than one-half acre of land and a combined in-house usage and irrigation usage that cannot exceed 13,000 gallons per day. IDWR also noted the existence of two surface water rights that are appurtenant to a large portion of the subdivision. IDWR recommended that all irrigation be provided in any new subdivision by existing surface rights when those rights are available and that domestic wells should be limited to "in-house" use or only used for occasional irrigation of less than one acre when the surface water rights are not available. It also noted that the need to specifically exclude surface water rights from deeds to individual lot owners is sometimes overlooked by property developers and that it creates water right problems that are difficult to remedy. The Twin Falls Fire Department ("Fire Department") stated that it did not see "any fire related issues" from the addition of phase two to the Shoshone Heights Subdivision, but also provided that it could not recommend approval of any further phases until either a second fire access road meeting the remoteness requirements of the International Fire Code was constructed or there was a legal agreement that all homes built after phase two have a fire sprinkler system. Renaissance chose the home fire sprinkler system requirement to comply with the fire code.

On July 19, 2021, Community Development Services provided a staff report for the Twin Falls Planning and Zoning Commission's ("PZC") review, which stated that the preliminary plat "complies with the city code in regards to the development criteria for the SUI Zoning District." The staff report also recommended, among other conditions of approval, that PZC require either

the construction of a second fire access road or the installation of fire sprinkler systems in all homes built after phase two.

PZC held a public hearing on the Application in August 2021, where members of the public and representatives of Renaissance testified. Neighbors of the proposed subdivision voiced concerns regarding the traffic burden and safety hazards the subdivision posed, the existence of only one entry and exit point, and the risk of wildfire.

About two weeks after the public hearing, PZC issued a written decision (the "Written Decision") denying Renaissance's preliminary plat application. The Written Decision cited Twin Falls City Code Title 10 and referenced health and safety concerns with the Application due to the subdivision's lack of a second egress. The Written Decision explained that the lack of a second egress "creates a choke point down at the gates," and "a single access to the property can lead to serious issues of trying to evacuate people in an emergency situation, proposed sprinkler systems only address fires within the residences, and traffic burden placed upon the Hankins and Falls Intersection."

Renaissance timely appealed PZC's Written Decision to the County. The County held a hearing on that appeal at the end of November 2021. The County heard testimony from Rex Harding and Dan Birch in favor of the development, and from Stace Campbell, a neighbor, in opposition to the development. In responding to the County's question about wildfires in the area, Stace Campbell testified that residents had to evacuate the area three times in the last ten years. Rex Harding acknowledged that there are no planned fire hydrants in the subdivision, and the only way to put out fires in the subdivision would be from the water that is transported on board a fire truck responding to the fire.

About two weeks later, the County issued its decision denying Renaissance's Application. The County determined that PZC made reasonable findings in its decision to deny the Application based on the record before it and the concerns raised in the public hearings. The County determined that PZC's Written Decision was "based upon the health and safety concerns of the development, neighbors, and the surrounding area as the subdivision does not provide a second egress and creates a choke point down at the gates." The County explained that PZC's decision was also based on a conclusion that "a single access to the property can lead to serious issues of trying to evacuate people in emergency situations," whereas "the proposed sprinkler systems only address fires within the residences," and the development's single access point would place a "traffic burden . .

4

. upon the Hankins and Falls Intersection." The County noted that the letters received by the agencies "**did not** raise objections to the proposed use and stated guidelines subject to their approval[,]" (emphasis in original), and also noted that the Fire Department conditioned its approval on either a second ingress and egress or the installation of the home sprinkler systems.

Renaissance filed an application for reconsideration two weeks later. The County took no action on the request for reconsideration; therefore, it was deemed denied. Renaissance then filed a timely petition for judicial review with the district court.

## II.    STANDARDS OF REVIEW

The Local Land Use Planning Act ("LLUPA") provides an affected person the right to seek judicial review of the approval or denial of a land use application, as provided for in the Idaho Administrative Procedure Act ("Idaho APA"). *See* Idaho Code § 67-6521(1)(d); *Nw. Neighborhood Ass'n v. City of Boise*, 172 Idaho 607, 613, 535 P.3d 583, 589 (2023). "For purposes of judicial review of LLUPA decisions, a local agency making a land use decision, such as the Board of Commissioners, is treated as a government agency under [the Idaho APA]." *Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 508, 148 P.3d 1247, 1254 (2006).

"The actions of a governing board are afforded a strong presumption of validity." *Nw. Neighborhood*, 172 Idaho at 613, 535 P.3d at 589 (citing *Duncan v. State Bd. of Acct.*, 149 Idaho 1, 3, 232 P.3d 322, 324 (2010)). "A reviewing court does not substitute its judgment for that of a governing board." *Id*. Rather, under the Idaho APA, a land use decision shall be affirmed unless the reviewing court determines the governing board's findings, inferences, conclusions, or decisions, were:

> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) not supported by substantial evidence on the record as a whole; or
>
> (e) arbitrary, capricious, or an abuse of discretion.

*Id*. (quoting I.C. § 67-5279(3)). Even if the governing board's decision on a land use application is made in violation of section 67-5279(3), the decision must be affirmed unless a substantial right of the appellant has been prejudiced. I.C. § 67-5279(4)).

When a district court acts in its appellate capacity under the Idaho APA, this Court "review[s] the district court's decision as a matter of procedure." *917 Lusk, LLC v. City of*

5

*Boise*, 158 Idaho 12, 14, 343 P.3d 41, 43 (2015) (quoting *Williams v. Idaho State Bd. of Real Est. Appraisers*, 157 Idaho 496, 502, 337 P.3d 655, 661 (2014)). In reviewing the district court's decision, this Court conducts an independent review of the governing board's record. *Id.* (citing *Dry Creek Partners, LLC v. Ada Cnty. Comm'rs, ex rel. State*, 148 Idaho 11, 16, 217 P.3d 1282, 1287 (2009)). If the district court affirmed a land use decision, this Court will uphold the district court's decision provided the governing board's findings were supported by substantial and competent evidence; however, this Court freely reviews the district court's conclusions of law. *Id.*

### III.    ANALYSIS

### A.    There are no grounds to invalidate the County's decision under the procedural requirements of LLUPA.

Renaissance contends that the County's decision affirming PZC's denial of Renaissance's Application violates statutory provisions of LLUPA and should be invalidated under Idaho Code section 67-6535(2)(a). In support of this contention, Renaissance makes three arguments: (1) Twin Falls City Code contains no express requirement that there be a second egress in a subdivision; (2) there were unresolved factual disputes in PZC's Written Decision; and (3) the County failed to address the Application's compliance with the Twin Falls Comprehensive Plan. Each argument is addressed in turn.

The approval or denial of any land use application must be based on "standards" and "criteria" set forth in the comprehensive plan, zoning ordinance, or another appropriate ordinance or regulation of the city or county. I.C. § 67-6535(1). When making the decision to approve or deny a land use application, LLUPA requires the governing authority to, first, issue a written "reasoned statement" accompanying its decision explaining the relevant standards and criteria it applied and, second, explain why the land use application was approved or denied:

> The approval or denial of any application required or authorized pursuant to this chapter shall be in writing and accompanied by a reasoned statement that explains the criteria and standards considered relevant, states the relevant contested facts relied upon, and explains the rationale for the decision based on the applicable provisions of the comprehensive plan, relevant ordinance and statutory provisions, pertinent constitutional principles and factual information contained in the record.

I.C. § 67-6535(2). Critically, the "[f]ailure to identify the nature of compliance or noncompliance with express approval standards or [the] failure to explain compliance or noncompliance with

6

relevant decision criteria shall be grounds for invalidation of an approved permit or site-specific authorization, or denial of same, on appeal." I.C. § 67-6535(2)(a).

1. *The County's reasoned statement identified the health and safety decision criteria contained in Twin Falls City Code Title 10 Chapter 12 General Subdivision Provisions, Preliminary Plats as the basis of its decision.*

The County's reasoned statement identified Title 10 of the Twin Falls City Code, including Chapter 12 General Subdivision Provisions, Preliminary Plats as the applicable law. The reasoned statement initially concluded that PZC denied the Application based on health and safety concerns related to the lack of a second egress, and then determined that this conclusion was reasonable:

> The Planning and Zoning Commission made reasonable findings in their decision to deny the Preliminary Plat Application based upon the record before them and the concerns raised in the public hearings. See Idaho Code § 67-6535. Specifically, the Commission[']s decisions [sic] was based upon the health and safety concerns of the development, neighbors, and surrounding area as the subdivision does not provide a second egress and creates a choke point down at the gates. The Commission also found a single access to the property can lead to serious issues of trying to evacuate people in emergency situations, proposed sprinkler systems only address fires within the residences, and traffic burden placed upon the Hankins and Falls Intersection.

Title 10 of the Twin Falls City Code provides the zoning and subdivision regulations for land that falls under the jurisdiction of the city, including the area of impact. Section 10-1-4(A) declares a Twin Falls' policy that subdivided land shall be of such a character that it can be used safely for building purposes "without danger to health or peril from fire, flood or other menace…." Section 10-12-2-3 provides the requirements for submitting a preliminary plat application. Subsection H of that provision sets forth decision criteria that must be applied when reviewing such an application; one of the criteria is "[t]he other health, safety or environmental problems that may be brought to [PZC's] attention." T.F.C.C. § 10-12-2-3(H)(2)(e).

The County acknowledges that its reasoned statement does not provide specific citations to the relevant portions of the Twin Falls City Code discussed above. Nevertheless, the County's decision provides a sufficient basis for understanding the criteria that were applied and the rationale for affirming the denial of the Application. The reasoned statement provides the following: (1) identification of Twin Falls City Code Title 10, and specifically Chapter 12 General Subdivision Provisions, Preliminary Plat (section 10-12-2-3) as applicable law; (2) a conclusion that PZC's decision to deny the Application was reasonable, based on the record before it "and the concerns raised in the public hearings[;]" and (3) a conclusion that the decision was based on health

7

and safety concerns. Likewise, PZC'S Written Decision provides: (1) a general reference to Twin Falls City Code Title 10; (2) a statement that PZC "considered the potential impact the proposed preliminary plat would have on the surrounding neighboring properties, access, traffic, and safety[;]" and (3) a statement that "[PZC] deliberated to determined [sic] if the application was in compliance with Twin Falls City Code as there are concerns about health and safety[.]" These statements demonstrate that PZC and the County understood that their duties in reviewing the Application required careful consideration of the health and safety concerns raised by the public, and they explain the basis for the denial.

Beyond the lack of specific citations, Renaissance contends that, if the County intends to enforce a minimum requirement of two egress points in a subdivision in the area of impact, the applicable Twin Falls City Code must be amended to expressly contain this requirement. Otherwise, the County has created and applied an unwritten standard under the guise of "health and safety." This argument goes too far. It is not reasonable to expect governing authorities to foresee every possible health and safety issue that may arise and list every requirement or condition that they might deem necessary for approval in a code. This is especially true considering, like the situation in this case, that what may be safe or pose no known health concerns in one subdivision may be unsafe or pose health concerns in another.

Renaissance also contends that the County's failure to identify a specific code provision requiring two access points renders it an arbitrary decision. To support its contention, Renaissance cites our decision in *Lane Ranch P'ship v. City of Sun Valley*, 145 Idaho 87, 91, 175 P.3d 776, 780 (2007), where we held that the city's decision requiring a landowner to submit an application for design review or an application for the approval of a subdivision to construct a private road was unreasonable and an abuse of discretion. Renaissance's reliance on *Lane Ranch* is misplaced.

Renaissance does not allege, and the record does not demonstrate, that the County applied irrelevant sections of the code to its decision on the Application, which is precisely how the city erred in *Lane Ranch*. *See id*. at 90, 175 P.3d at 779 ("[R]eview and approval [of an application for private road construction] does not grant the ability to arbitrarily apply irrelevant ordinance sections. Had the City intended to require Title 9 (design review) or Title 10 (subdivision approval) to apply to the construction of private streets, Title 7 [road construction] could have incorporated those provisions, but it does not."). Rather, Renaissance acknowledges, and the record reflects, that the County applied section 10-12-2-3 of the Twin Falls City Code, referencing health and

8

safety concerns, to its decision to deny the Application, and section 10-12-2-3 is the correct section of the code that governs preliminary plat applications.

As a final argument on this issue, Renaissance argues that since the Fire Department presented a second egress point as an alternative means of complying with fire code requirements, the County should not be allowed to deny the Application on this basis because Renaissance has agreed all homes built after phase two must be constructed with interior fire sprinkler systems. We reject this argument. PZC and the County are not required to follow the commenting agency's recommendations. Moreover, even if the installation of fire sprinkler systems satisfies the Fire Department's concerns about fire code compliance, PZC and the County were still authorized to find, as they did, additional health and safety concerns that can only be mitigated by a second egress. Interior sprinklers provide the Fire Department with additional time to respond to a fire within a single residence. They do not necessarily address a concern for safely and efficiently evacuating people from the subdivision due to a subdivision-wide emergency.

In short, we conclude that the County's reasoned statement identified the relevant criteria for its decision and explained the basis for the denial. As such, there are no grounds for invalidating the decision under Idaho Code section 67-6535(2)(a).

> *2. PZC's Written Decision failed to resolve factual disputes concerning the traffic burden imposed on the Hankins Road/Fall Avenue intersection, but the County properly affirmed PZC's decision based on health and safety concerns.*

Renaissance contends that the County erred in affirming PZC's denial of the Preliminary Plat Application because PZC's Written Decision does not state the relevant contested facts relied upon in making the decision to deny the Application as required by Idaho Code section 67-6535(2). Specifically, Renaissance contends PZC's decision was based on "sensational warnings" and "fear mongering" by neighboring residents regarding the perceived dangers of Hankins Road and that the Written Decision relies on mere recitations of the record rather than resolution of "contradictory information presented at the hearing." We agree with Renaissance that PZC's Written Decision, by merely reciting the concerns of those opposed to the subdivision, does not provide support for the denial of the Application based on the traffic burden imposed on the Hankins Road/Falls Avenue Intersection. However, we conclude that PZC's Written Decision met the reasoned statement requirements for the denial of the Application based on health and safety concerns, and the County properly affirmed that decision.

9

Section 67-6535(2) of LLUPA requires that reasoned statements state the relevant contested facts relied upon to make a land use decision. I.C. § 67-6535(2). In other words, a reasoned statement must include the governing authority's findings of fact. The difference between a "finding of fact" and a "conclusion of law" sometimes gets lost. Clarence Morris, an esteemed law professor and scholar from the University of Texas, once explained: "Since questions of fact are answered in one way and questions of law in another, the distinction between them is vitally practical. A question of fact usually calls for proof. A question of law usually calls for argument. The lawyer who confuses one with the other will look for evidence when he should be writing a brief or vice versa." Clarence Morris, Law and Fact, 55 Harv. L. Rev. 1303, 1304 (1942). The textbook example of a "finding of fact" is when a jury in a tort case must decide whether the traffic light was red or green when the defendant hit the plaintiff. The plaintiff asserts the light was red. The defendant asserts the light was green. The jury, based on the testimony of the parties and witnesses and the physical evidence presented, must then "find" what color the light was when the collision occurred.

We explained in *Crown Point Development, Inc. v. City of Sun Valley*, that a "finding of fact" is a determination made after one party asserts a fact and another contests it and the governing authority must decide what the fact is based on the evidence presented; it is not a mere recitation of what each witness said or a summary of the evidence presented:

> In this case, the majority of the City's findings of fact fail to make actual factual findings; instead, the "findings" merely recite portions of the record which could be used in support of a finding. For instance, Findings 7(a) and 7(b) merely state that Crown Point's Phase 5 applications contain certain information about the size of the units. Additionally, several of the findings consist of nothing more than a recitation of testimony given in the record. By reciting testimony, a court or agency does not find a fact unless the testimony is unrebutted in which case the court or agency should so state. "A finding of fact is a determination of a fact by the court [or agency], which fact is averred by one party and denied by the other and this determination must be founded on the evidence in the case." *C.I.T. Corp. v. Elliott*, 66 Idaho 384, 397, 159 P.2d 891, 897 (1945) (internal quotations and citation omitted). Indeed, nothing listed under Finding 7 can be said to be a factual finding made by the City. The "findings of fact" do not determine any facts; they are only recitations of evidence which could be used to support a finding without an affirmative statement that the agency is finding the fact testified to. Thus, we remand this matter to the City so that it can make proper factual findings.

144 Idaho 72, 77–78, 156 P.3d 573, 578–79 (2007). Findings of fact do not have to take a particular form, but they do have to make clear what the factfinder believes are the facts after considering all the evidence so that we can engage in meaningful judicial review:

> We wish to make it clear that by insisting on adequate findings of fact we are not simply imposing legalistic notions of proper form, or setting an empty exercise for local governments to follow. No particular form is required, and no magic words need be employed. *What is needed for adequate judicial review is a clear statement of what, specifically, the decisionmaking body believes, after hearing and considering all the evidence, to be the relevant and important facts upon which its decision is based. Conclusions are not sufficient.*

*Workman Fam. P'ship v. City of Twin Falls*, 104 Idaho 32, 37, 655 P.2d 926, 931 (1982) (emphasis in original) (quoting *S. of Sunnyside Neighborhood League v. Bd. of Comm'rs*, 569 P.2d 1063, 1076–77 (Or. 1977) (en banc)).

### a. Traffic burden evidence

The first reason for the denial, the traffic burden placed on the Hankins Road and Falls Avenue Intersection, is inadequate because the Written Decision failed to resolve disputed issues regarding Hankins Road or the alternative means of avoiding the Intersection. Although PZC and the County received testimony from several concerned neighbors regarding safety concerns on Hankins Road due to speeding and a "blind hill," there was also evidence disputing these assertions. Mr. Harding, an engineer working on the project, disputed this testimony by asserting that the road is safe at the posted speed limit of twenty-five miles per hour and the road does not curve into a blind hill: "I don't see that that's much blind, especially not at 25 miles an hour. You have plenty of time to see coming up on somebody, even in the daylight or even in the dusk and that." Mr. Harding also testified that there is an alternative way for people traveling down Hankins Road near the Shoshone Heights Subdivision to avoid the Hankins Road/Falls Avenue Intersection: by turning off Hankins Road into a neighborhood west of Shoshone Heights, which empties directly onto Falls Avenue west of the Intersection. Nowhere in the Written Decision are any of these statements by Mr. Harding addressed or resolved. Instead, the Written Decision merely cited, as a summary of the evidence, the four people who spoke in opposition to the Application, raising the following concerns related to the traffic burden on the Hankins Road and Falls Avenue Intersection:

11

- Hankins road already beyond capacity and is unable to handle additional cars, pedestrian traffic, and service/delivery vehicles, as the current road was not built for an increase in traffic.
- Increase of traffic for the existing subdivision with only (1) entrance/exit to the subdivision and safety for the existing homes.
  ….
- No access for emergency services[.]
  ….
- Speed limit on Hankins.

These summary statements do not constitute findings of fact because they do not demonstrate that PZC specifically determined anything—especially why it found these statements to be true notwithstanding the presence of testimony to the contrary. Likewise, the "Explanation for Decision" section of PZC's reasoned statement consists of a single conclusory statement regarding the traffic burden on the Hankins Road and Falls Avenue Intersection: "The Commission also determined . . . the increase in traffic would place a burned [sic] on the Hankins and Falls Avenue intersection." We agree with Renaissance that the Written Decision suffers from the same inadequacies present in the city's decision that was at issue in *Crown Point*: the findings of fact are mere recitations of portions of the record. PZC failed to provide any rationale as to why Mr. Harding's testimony regarding Hankins Road and the Intersection was disregarded. Furthermore, PZC failed to make any meaningful determination as to precisely how the proposed development poses an additional, particularized, health and safety concern related to an increased traffic burden on the Hankins Road/Falls Avenue Intersection. The County's decision suffers from the same problem. We therefore conclude that these flaws are fatal to the first reason for the denial of the Application.

b. Health and safety evidence

The second basis for the denial of the Application was health and safety concerns posed by the lack of a second egress. Unlike the traffic burden issue, PZC was not presented with any factual dispute regarding the lack of a second egress or the safety concerns that might pose. Both PZC and the County received uncontroverted evidence that the fifty-four homes planned for Shoshone Heights will have only one entry and exit point in and out of the subdivision—at the subdivision's gated entry, which empties onto Hankins Road. The County also heard testimony about potential wildfires in the area and the difficulty evacuating the subdivision's homeowners in the event of an emergency.

Critically, Renaissance did not dispute any of the concerns regarding having only one

12

egress except to contend that the installation of residential fire sprinklers after phase two of the project would address the problem. Again, Renaissance's argument misses the point: Meeting the fire code or satisfying the Fire Department's conditions for approval is not the same as addressing or disputing concerns about the safety issues posed by evacuating fifty-four homes in an emergency through a single, gated exit. Consequently, Renaissance has not demonstrated any error in the County's decision to affirm PZC's denial of the Application based on a lack of factual findings under Idaho Code section 67-6535.

3. *The County's decision to affirm PZC's denial was an error, but it did not prejudice Renaissance's substantial rights.*

Renaissance argues that the County erred by affirming PZC's denial of its preliminary plat application because PZC's Written Decision does not address the project's compliance with the Comprehensive Plan. Renaissance emphasizes that the Application is compliant with the Comprehensive Plan because "[t]he 2016 Comprehensive Plan 'Grow With Us' designates the land upon which Shoshone Heights is located as rural residential" and the proposed development is for a residential subdivision. However, PZC's failure to consider the Application's compliance with the Comprehensive Plan did not prejudice Renaissance's substantial rights.

From the outset, it is important to recognize that LLUPA requires a governing authority to consider a comprehensive plan only when making the decision to adopt or amend zoning ordinances or when considering conditional use permits. I.C. §§ 67-6511 and 67-6512(a). LLUPA does not require consideration of a comprehensive plan in the context of a PUD or subdivision application. The Twin Falls City Code, however, requires the PZC to consider the conformance of the proposed subdivision with the Comprehensive Plan, right along with other criteria such as health and safety:

> In determining the acceptance of a proposed subdivision the Commission shall consider the objectives of this Title and at least the following:
>
> a. The conformance of the subdivision with a Comprehensive Plan;
> . . . .
> e. The other health, safety or environmental problems that may be brought to the Commission's attention.

T.F.C.C. § 10-12-2-3(H)(2)(a), (e).

Given the plain language of section 10-12-2-3(H)(2), PZC's Written Decision should have addressed the project's compliance with the Comprehensive Plan along with all other criteria set forth in subsection H. *See* I.C. § 67-6535(2) (reasoned statement includes relevant criteria and

13

standards). While the failure to address relevant decision criteria is grounds for invalidating a governing body's decision, Idaho Code section 67-5279(4) provides that even if a land use decision is made in violation of a procedural requirement, the decision must be affirmed unless "substantial rights" of the appellant have been prejudiced. *Nw. Neighborhood Ass'n v. City of Boise*, 172 Idaho 607, 621, 535 P.3d 583, 597 (2023).

In this case, Renaissance cannot demonstrate prejudice to a substantial right. This Court explained at length in *Urrutia v. Blaine County*, that a comprehensive plan is intended merely as a guideline whose primary use is in guiding zoning decisions. 134 Idaho 353, 357–58, 2 P.3d 738, 742–43 (2000). We also explained that a proposed subdivision does not have to conform to all aspects of a comprehensive plan to be approved. *Id.* PZC denied the Application based on the health and safety criteria in subsection H of the relevant ordinance. We have held that the denial on that basis was proper. As a result, the failure to address conformance with the Comprehensive Plan did not prejudice a substantial right of Renaissance, and the County's decision to affirm that decision cannot be invalidated on that basis.

**B.      The County's decision does not reflect a lack of practical considerations and is not fundamentally unfair.**

Renaissance argues that the County's decision violates Idaho Code section 67-6535(3) because it lacks practical consideration of the Land Trade Agreement involving Shoshone Heights and the City and is fundamentally unfair in light of that agreement. Specifically, Renaissance contends that it is fundamentally unfair that the City is allowed to retain the benefit of owning the Evel Knievel jump site when the County denied Shoshone Heights the right to complete development of the subdivision as contemplated by the Land Trade Agreement. Because the Shoshone Heights PUD was previously approved by the City, Renaissance argues that the County's denial of the Application violated the principle of fundamental fairness by adding an additional requirement to the development of subsequent phases of Shoshone Heights. We disagree.

Section 67-6535(3) of the Idaho Code requires land use planning decisions to be "founded upon sound reason and practical application of recognized principles of law." When a court reviews such decisions, the adequacy of the procedures is evaluated, and the court considers the proceedings as a whole and the resultant decision "in light of practical considerations with an emphasis on fundamental fairness and the essentials of reasoned decision making." I.C. § 67-

14

6535(3).

Whether it is fundamentally unfair under the terms of the Land Trade Agreement for the City to retain the Evel Knievel jump site after the County denied Renaissance's Preliminary Plat Application is a separate issue from whether the County's decision regarding the Application is fundamentally unfair. The issue of fairness under the terms of the Land Trade Agreement is a contract dispute outside of the scope of this appeal. This appeal is for judicial review of the County's decision on a land use application, the scope of which is dictated by the Idaho APA. *See* I.C. § 67-5279(3). Section 67-5279(3) does not include resolution of a collateral contractual issue. Thus, we will not address this issue further.

## C. The County's decision was not arbitrary, capricious, or influenced by bias against Renaissance.

Renaissance argues that the County's decision affirming PZC's denial of Renaissance's Preliminary Plat Application was arbitrary and capricious and influenced by bias against Renaissance. Renaissance argues that because there are other subdivisions in the area that have only one egress onto Hankins Road, the County has not applied the law equally to Shoshone Heights and neighboring subdivisions. Renaissance also contends that the denial of its Application was based on a desire to send a message to the City and the County about infrastructure along Hankins Road rather than "earlier interpretations of the same ordinance [the Twin Falls City Code's health and safety policy] and treatment of adjacent subdivisions in that location," which is an arbitrary basis for the decision. We disagree.

"A city's actions are considered arbitrary and capricious if made without a rational basis, or in disregard of the facts and circumstances, or without adequate determining principles. *Lane Ranch P'ship v. City of Sun Valley*, 145 Idaho 87, 91, 175 P.3d 776, 780 (2007) (citing *Enterprise, Inc. v. Nampa City*, 96 Idaho 734, 739, 536 P.2d 729, 734 (1975)). This Court will not substitute its judgment for that of a city when it acts within the bounds of its discretion. *Enterprise*, Inc., 96 Idaho at 739, 536 P.2d at 734. "The Due Process Clause entitles a person to an impartial and disinterested tribunal…. Decisions by a zoning board applying general rules or specific policies to specific individuals, interests or situations, are quasi-judicial in nature and subject to due process constraints." *Marcia T. Truner, L.L.C. v. City of Twin Falls*, 144 Idaho 203, 209, 159 P.3d 840, 846 (2007) (quoting *Eacret v. Bonner County*, 139 Idaho 780, 784, 86 P.3d 494, 498 (2004) (overruled on other grounds by *City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353

(2012)). Impartiality means "the lack of bias for or against either party to the proceeding. Impartiality in this sense assures equal application of the law. That is, it guarantees a party that the judge who hears his case will apply the law to him in the same way he applies it to any other party." *Id.* (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 775–76 (2002)).

Renaissance has failed to demonstrate how either PZC's Written Decision or the County's decision was arbitrary, capricious, or influenced by bias against Renaissance. The decisions were reasonably based on the record before them and upon the relevant approval criteria of the health and safety provisions contained within Twin Falls City Code section 10-12-2-3. PZC concluded, and the County agreed, that the lack of a second egress poses serious concerns about people's ability to safely and efficiently evacuate the area through the single, gated exit in an emergency situation. Although Renaissance's decision to require installation of fire sprinkler systems in all homes built after the first thirty would meet the Fire Department's alternative condition for approval, the County reasonably concluded that this did not address the evacuation concern.

The record reflects that PZC and the County received uncontroverted testimony that the area was evacuated three times in the last ten years. The County also received confirmation from Mr. Harding that the only water available to put out a fire in the neighborhood would be the water carried in on a fire truck (because there are no fire hydrants in the neighborhood). Thus, PZC's and the County's requirement for a second egress was not arbitrarily applied, but was based on facts contained within the record that support finding a health and safety concern posed by the single, gated egress.

The fact that existing neighboring subdivisions were not required to have a second egress is irrelevant to this Court's review of the County's decision in this case. No information was provided to this Court to indicate when or why the neighboring subdivisions were approved, how many houses are in each pre-existing subdivision, whether those neighborhoods have a gated egress, etc., to have any basis to adjudicate unequal treatment under the law. Neighborhoods, county and city infrastructure, traffic patterns, and environmental hazards or safety concerns change over time. What may have been safe for existing subdivisions at the time of approval may change for a new neighboring subdivision as time passes and the area has changed, or if there are any other relevant factual differences between the subdivisions. PZC and the County were required to apply the relevant approval criteria for their land use decisions and make those decisions based upon the facts in the record for the application at hand. We continue to hold that the County met

16

those requirements here.

Finally, Renaissance's argument that the decision to deny its Application was influenced by bias due to PZC's desire to send a message about infrastructure on Hankins Road is not supported by the record. As explained *supra*, we agree with Renaissance that the denial of the Application based on the traffic burden posed to the Intersection was without support; thus it was improper. However, the denial of the Application due to a lack of a second egress is not related to sending any message to the City or County to address traffic on Hankins Road. While it is not Renaissance's responsibility to address traffic concerns on Hankins Road or make any improvements to infrastructure outside the Shoshone Heights Subdivision, it is Renaissance's responsibility to address health and safety concerns within the neighborhood, such as a second exit out of the subdivision. Relatedly, it is the County's responsibility to consider health and safety issues presented by a proposed development, including the ability for people in the area to safely evacuate in emergency (such as fire). *See* T.F.C.C. §§ 10-1-4(A); 10-12-2-3(H)(2). In short, we conclude that Renaissance has failed to demonstrate that the decision was arbitrary, capricious, or based on bias.

**D.      Renaissance is not entitled to attorney fees because it is not the prevailing party.**

Renaissance argues that it is entitled to attorney fees under Idaho Code section 12-117. However, Renaissance is not the prevailing party; therefore, it is not entitled to attorney fees.

**IV.      CONCLUSION**

The district court's decision dismissing the petition for judicial review is affirmed. The County's decision to deny Renaissance's Application was rooted in the express approval standard of the health and safety provisions of Twin Falls City Code section 10-12-2-3, and provided a reasoned statement for the decision to satisfy the requirements of Idaho Code section 67-6535. No attorney fees are awarded on appeal. Costs on appeal are awarded to the County as the prevailing party.

Chief Justice BEVAN, Justices MOELLER, ZAHN, and Justice Pro Tem BURDICK CONCUR.

17